IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| The Associated General Contractors of America, ) ) ) Plaintiff, ) ) v. ) ) Darren Stokes, ) ) Defendant. ) ) | Civil Action No. 1:11cv795 (GBL/TRJ) |

## REPORT AND RECOMMENDATION

This matter is before the court on plaintiff's motion for default judgment (no. 19) against defendant Darren Stokes. Process for defendant was served by publication (no. 12) pursuant to court order (nos. 9, 11). The Clerk entered default against defendant on February 2, 2012 (no. 14). Upon consideration of the record, the magistrate judge makes findings as follows and recommends that default judgment be granted in part and denied in part. Plaintiff's motion should be granted in all aspects save for its request for statutory damages pursuant to its claim of trademark infringement under 15 U.S.C. § 1114(1)(a), which should be denied.

## <u>Jurisdiction and Venue</u>

This court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, as plaintiff seeks relief pursuant to federal trademark law, and 28 U.S.C. § 1367, as plaintiff's state law claims share a "common nucleus of operative fact" with its federal law claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130 (1966).

The complaint sufficiently alleges personal jurisdiction over defendant pursuant to Fed. R. Civ. P. 4(k) and Va. Code § 8.01-328.1(A)(4), as defendant is alleged to have caused tortious injury in the Commonwealth of Virginia by soliciting business through the direction of electronic contacts from the Commonwealth of Massachusetts to plaintiff's members in Virginia. Venue lies in this court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to plaintiff's claims occurred in this district.

## Standard

Federal Rule of Civil Procedure 55 permits the court to grant a motion for default judgment where the well-pled allegations of the complaint establish plaintiff's entitlement to relief, and where a defendant has failed to plead or defend as provided by and within the time frames contained in the rules. *Music City Music v. Alfa Foods, Ltd.,* 616 F. Supp. 1001, 1002 (E.D. Va. 1985). By defaulting, a defendant admits the plaintiff's well-pled allegations of fact, which then provide the basis for judgment. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). *See also DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008) (citing *Ryan*); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has effect of admitting factual allegations in complaint); *Marion County Court v. Ridge*, 13 F.2d 969, 971 (4th Cir. 1926) (default admits well-pled facts).

## Factual Background

The well-pled allegations of the complaint establish the following facts.

Plaintiff is a District of Columbia corporation with a principal place of business in Arlington, Virginia, and is a nationwide trade association representing the general contracting and construction industry. Compl. ¶¶ 1, 6. Defendant is an individual who resides in the

Commonwealth of Massachusetts.  Compl. ¶ 2.

Plaintiff owns a number of registered trademarks associated with its business that incorporate plaintiff's name and the initials "AGC" and "AGCA," and which plaintiff used before the events giving rise to the complaint in this matter.  Compl. ¶¶ 7-9, Exh. 1.

Beginning at least as early as September 2008, defendant sent unsolicited advertisements by fax to plaintiff's members promoting the sale of a membership directory referred to as "The American General Contractors Directory."  Compl. ¶ 13, Exh. 3.  The advertisement directed the recipient to make payment to "The American General Contractors Directory."  Compl. Exh. 3. The advertisement listed a "corporate headquarters" address in Boston, Massachusetts and a "membership processing department" address in Stoughton, Massachusetts.  Compl. Exh. 3. Defendant sent the advertisement via fax dozens of times to recipients in multiple states.  Compl. ¶ 13.

By counsel, plaintiff wrote to defendant on November 7, 2008 regarding the advertisement.  Compl. ¶ 15, Exh. 4.  Defendant responded by email on November 14, 2008, stating that he would "cease disseminating the solicitation and any and all other materials using THE AMERICAN GENERAL CONTRACTORS DIRECTORY or any other designation that is confusingly similar to one or more of [plaintiff's] Marks."  Compl. ¶ 15, Exh. 5.

However, beginning at least as early as January 6, 2009, defendant resumed sending unsolicited fax advertisements to plaintiff's members.  Compl. Exh. 7.  The second version of the advertisement, received by one of plaintiff's members in Kentucky on January 6, 2009, indicated in prominent type at the top that it was from the "National Association of General Contractors & Home Builders" and again solicited payment for listing in a directory, though it did not give a name for that directory.  Compl. Exh. 7.  The advertisement instructed the recipient to make

payment to "General Contractors & Home Builders" and provided the web address www.generalcontractorshomebuilders.org. Compl. Exh. 7. The advertisement provided the same "corporate headquarters" and "membership processing department" addresses in Boston and Stoughton, Massachusetts as the first version. Compl. Exh. 7. The member who received the second version of the advertisement in Kentucky mailed a $150.00 payment in response. Compl. Exh. 7.

Beginning at least as early as March 2009, defendant sent a third version of the advertisement to plaintiff's members by fax. Compl. ¶ 16. The third version promoted "The American General Construction Directory" and showed the corporate name "National Association for General Contractors & Home Builders, Inc." underneath the directory name. Compl. ¶ 16, Exh. 6. The advertisement instructed the recipient to make payment to "N.A.G.C." and provided the web address www.generalcontractorshomebuilders.org. Compl. Exh. 6. As with the first version, the advertisement listed the "corporate headquarters" and "membership processing department" addresses in Boston and Stoughton, Massachusetts. Compl. Exh. 6. Defendant sent the third version of the advertisement via fax dozens of times to recipients in multiple states, including Virginia. Compl. ¶ 16.

On May 6, 2009, plaintiff by counsel again wrote to defendant regarding the advertisement. Compl. ¶ 18, Exh. 7. However, beginning at least as early as November 2010 and continuing to at least June 2011, defendant sent a fourth version of the fax advertisement to plaintiff's members. Compl. ¶ 11, Exh. 2. The advertisement promoted membership in the "American General Construction Association" and prominently displayed the initials "A.G.C." accompanied by a circular logo. Compl. Exh. 2. The advertisement instructed the recipient to make payment to "AGC Association" and to send it to the "membership processing department"

at a post office box in Brockton, Massachusetts.  Compl. Exh. 2.  The advertisement also listed a

"corporate headquarters" address at 1655 North Fort Myer Drive, Arlington, Virginia, which is

approximately one mile from plaintiff's corporate headquarters.  Compl. ¶ 12, Exh. 2.  Defendant

sent the fourth version via fax dozens of times to recipients in multiple states, including to at

least one of plaintiff's members in Virginia.  Compl. ¶ 11.

As a result of defendant's advertisements, plaintiff's members have made payments to

defendant on numerous occasions.  Compl. ¶ 21, Exh. 7.

<u>**Discussion and Findings**</u>

By its motion for default judgment, plaintiff seeks relief for trademark infringement

pursuant to 15 U.S.C. § 1114(1)(a), common law unfair competition, false advertising pursuant

to 15 U.S.C. § 1125(a)(1)(B), and common law fraud.  *See* Pl.'s Mem. in Supp. of Mot. for Def.

J. (no. 21) at 6-11.  The magistrate judge examines each count in turn below.

**Counts One, Two, Three, and Five: Trademark Infringement and Unfair**

**Competition**

To establish a claim for trademark infringement pursuant to 15 U.S.C. § 1114(1)(a) and a

claim for unfair competition, a plaintiff must show that (1) it possesses a mark; (2) defendant

used a "reproduction, counterfeit, copy, or colorable imitation" of that mark; (3) defendant's use

occurred in commerce; (4) defendant used the "reproduction, counterfeit, copy, or colorable

imitation" of the mark in connection with the sale, offering for sale, distribution, or advertising of

goods or services; and (5) defendant's use was likely to confuse consumers as to the source or

origin of goods or services.  15 U.S.C. § 1114(1)(a); *People for the Ethical Treatment of Animals

v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001); *George & Co. LLC v. Imagination Entm't Ltd.*,

575 F.3d 383, 393 (4th Cir. 2009).[1]  The question of whether consumer confusion is likely is analyzed based on the following nine factors: "(1) strength or distinctiveness of the mark; (2) similarity of the two marks to consumers; (3) similarity of the goods and services the marks identify; (4) similarity between the facilities used by the markholders; (5) similarity of advertising used by the markholders; (6) defendant's intent; (7) actual confusion; (8) quality of the defendant's product; (9) sophistication of the consuming public." *George & Co.,* 575 F. 3d at 393.  That said, all factors may not be relevant in any particular case and they are not weighed equally.  *Id*.  The marks must also be viewed in the light of "how the two parties actually use their marks in the marketplace to determine whether the defendant's use is likely to cause confusion." *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006).

First, the magistrate judge finds that plaintiff possesses the marks in question, as it is the registered owner of the following numbered trademarks: 373,159; 683,804; 1,624,180; 2,411,820; and 2,491,718.  Further, the magistrate judge finds that defendant's use occurred in commerce through the sending of faxes to various potential consumers and that the use was in connection with an advertisement for services involving listing in a directory.

Second, the magistrate judge finds that, defendant's marks are "colorable imitations" of plaintiff's marks in that the similarities between the marks lead to a likelihood of confusion on the part of the public.  The magistrate judge finds that there is significant similarity between the directory listing services provided (or proposed to be provided) by defendant and some of the services provided by plaintiff.  At least one payment has been made by a member of plaintiff's association to defendant as a result of defendant's fax communications, and that payment was

---

[1]  The standard for unfair competition in Virginia similarly focuses on the likelihood of confusion inquiry and thus may be dealt with in conjunction with the trademark infringement discussion. *People for the Ethical Treatment of Animals*, 263 F.3d at 364 n. 2.

made in error based on the mistaken belief of at least an association between defendant and plaintiff organizations.  Compl. ¶ 21.  This fact provides the basis for a finding of actual confusion on the part of the consuming public.  The complaint and plaintiff's memorandum in support of this motion lack substantial information regarding the remaining factors.  However, the finding of clear actual confusion as well as the similarity between the services provided lead the magistrate judge to find that there is at least a likelihood of confusion on the part of the public, so that defendant's marks constitute "colorable imitations" of plaintiff's marks.

On these findings, the magistrate judge finds that plaintiff has established its claims of trademark infringement and unfair competition.

Plaintiff here has gone one step further and claimed that defendant has used a "counterfeit" of its marks.  *See* Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21) at 8.  Counterfeit is a term of art, defined in 15 U.S.C. § 1127 as  "a spurious mark which is identical with, or substantially indistinguishable from" the plaintiff's mark.  Where a party produces counterfeit goods, there is a presumption of likelihood of confusion and plaintiffs are entitled to statutory damages. 15 U.S.C. § 1117(b) and (c); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987).  The majority of cases in this circuit tackling this issue have found the marks to be counterfeit, as they have been nearly exact copies of the allegedly infringed marks that were also placed on competing products. *See Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077 (D. Md. 1995) (using the exact Microsoft trademark on illegal copies of Microsoft software); *Polo Fashions* (4th Cir. 1987) (placing a polo player on the breast of knit shirts).  That said, in *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007), the circuit agreed with the district court in finding that dog toys with the mark "Chewy Vuiton" or a "CV" monogram were not substantially indistinguishable from the "Louis Vuitton" or "LV" marks,

because the design and color scheme were different.  It was also important to the court that the defendant was selling dog toys rather than knock off handbags. *Id*. at 269.

*Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp. Inc.*, 486 F. Supp. 2d 286 (S.D.N.Y. 2007) provides a useful analysis as well.  In *Colgate*, the court compared a toothpaste box for Colgate toothpaste and that for "Colddate" toothpaste, denying plaintiff's motion for summary judgment in finding that, while the boxes were quite similar, they were not "substantially indistinguishable" as a matter of law. 486 F. Supp 2d at 291.  The court made a broad generalization, stating that marks that are similar "but differ by two or more letters, are not likely to be considered counterfeit." *Id*. at 291.  This was so even considering that the allegedly counterfeit mark was placed on a competing product in the same market.

Based on the forgoing, the magistrate judge views the standard for finding a defendant's marks to be "counterfeits" of plaintiff's under 15 U.S.C. § 1127 as a high bar, which plaintiff has not overcome.  Looking first to Associated's logo or mark, there are significant stylistic and graphical differences from the mark used on defendant's fax advertisement of 2010-2011 (the only of defendant's advertisements to use a logo of any sort) including, but not limited to: defendant's mark lacks the letters "A," "G," and "C" (although the letters are placed separately next to the mark); defendant's mark appears to have a picture of a worker in the center with a garland of some sort below him, while plaintiff's mark contains the "AGC" letters with a larger "A" superimposed around the "G"; and defendant's mark has the organizational name of "American General Construction Association" circumscribing it, rather than "The Associated General Contractors of America." Compl. Exhs. 1- 2.  Defendant did place the mark in question on an advertisement for a service in the same industry as plaintiff.  However, based on the apparent graphical and stylistic differences, the magistrate judge finds that the mark cannot be

said to be "substantially indistinguishable" from plaintiff's and thus does not constitute a "counterfeit" of plaintiff's mark.

Plaintiff contends that defendant's faxed advertisements "make prominent use of the designation 'A.G.C.'" and that this constitutes the use of a counterfeit of plaintiff's mark.  Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21) at 8.  The magistrate judge finds that plaintiff's protected marks include both "AGC" and "AGCA."  Compl. Exh. 1.  Defendant's advertisements included the following comparable marks: "AGC OF VA"; "N.A.G.C."; and "AGC Association."  Compl. Exhs. 2, 6.  Clearly, these marks are similar to plaintiff's, but they must be viewed in conjunction with the remainder of the advertisements, as a normal reader would view them.  *CareFirst of Maryland*, 434 F.3d at 267.  Considering this, as well as the prominent use of organizational names distinct from plaintiff's, the magistrate judge finds that the various marks on defendant's advertisements are not "substantially indistinguishable" from plaintiff's and thus do not constitute "counterfeits" of plaintiff's "AGCA" or "AGC" marks as defined by 15 U.S.C. § 1127.

Defendant has used several organizational titles on his advertisements that closely resemble plaintiff's.  The magistrate judge compared plaintiff's organization, The Associated General Contractors of America, to those organizational titles utilized by defendant on his various advertisements, namely: "American General Construction Association," "American General Contractors Directory," "The American General Construction Directory," and "National Association for General Contractors & Home Builders."  Compl. Exhs. 1-3, 6.  Again, despite the notable similarities between the organizational titles used, the magistrate judge finds that the various marks on defendant's advertisements are sufficiently dissimilar such that they are not "substantially indistinguishable" from plaintiff's, and thus do not constitute "counterfeits" of

plaintiff's marks as defined by 15 U.S.C. § 1127.

On these findings, the magistrate judge finds that plaintiff has not established that defendant used a counterfeit of its marks, and thus plaintiff is not entitled to statutory damages pursuant to 15 U.S.C. § 1117(b) and (c).

**Count Four: False Advertising**

To establish a false advertising claim under 15 U.S.C.A. § 1125(a)(1)(B) of the Lanham Act, plaintiff must show that: "(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011). Where an advertisement is literally false, a plaintiff need not provide evidence of consumer deception. *Id*.

First, the magistrate judge finds that defendant made a false statement regarding the services he would provide, as no services were ever actually provided, indicating that no services were ever intended to be provided to those who paid defendant in response to his advertisement. Compl. ¶ 12. Second, the magistrate judge finds that this misrepresentation was material in that it did induce individuals to make payments to defendant. Compl. ¶ 21. Third, the magistrate judge finds that those payments were made due to defendant's deception in that the parties making payments believed that the advertised services would be provided. Fourth, the magistrate judge finds that, as the advertisements were sent to multiple potential consumers in various states

around the country, the advertisements were placed in interstate commerce. Compl. ¶ 11. Finally, the magistrate judge finds that plaintiff has been injured by defendant's advertisements by some combination of diversion of sales and injury to plaintiff's goodwill and reputation. Compl. ¶¶ 20 and 23.

On these findings, the magistrate judge finds that plaintiff has established its claim of false advertising.[2]

**Count Six: Fraud**

Plaintiff also asserts a common law claim of actual fraud against defendant. Plaintiff must therefore prove by clear and convincing evidence the following elements: "(1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) damages resulting from that reliance." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826 (4th Cir. 1999). Plaintiff must further prove that it acted to its detriment in actual and justifiable reliance on the defendant's misrepresentation. *Id*. The elements of fraud must be pled with particularly, specifically regarding "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Fed. R. Civ. Pro. 9(b); *Frank Brunckhorst CO., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 460 (E.D. Va. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

---

[2] The magistrate judge notes that 15 U.S.C. § 1117(a) provides for disgorgement of profits from a defendant found to have violated Section 1125(a). Section 1117(a) also provides that plaintiffs in such matters are entitled to damages sustained, and that this may be actual damages, or any amount up to three times that amount. While statutorily entitled to this relief, plaintiff has chosen not to request such relief in its memorandum in support of this motion for default judgment, and rather has chosen simply to focus on Section 1117(c). Furthermore, plaintiff has provided limited if any evidence regarding defendant's profits resulting from his actions, or actual damages incurred by plaintiff. For these reasons, the magistrate judge makes no findings in this area.

First, the magistrate judge finds that defendant communicated an intent to cease sending his infringing advertisements in an email to plaintiff on November 14, 2008. Compl. ¶ 15, Exh. 5. Second, the magistrate judge finds that thereafter, beginning at least as early as January 6, 2009, defendant resumed sending such advertisements to plaintiff's members. Compl. Exh. 7. Third, the magistrate judge finds that plaintiff relied on defendant's email communication of November 14, 2008, choosing to forgo taking any action to protect its interests at that time based on defendant's representation. Compl. ¶ 22. Fourth, the magistrate judge further finds that plaintiff has incurred investigatory and litigation costs, as well as damage to its reputation and goodwill as a result of its reliance on defendant's representation. Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21) at 11.

The magistrate judge finds that defendant's email of November 14, 2008 was a false representation made intentionally and knowingly, indicating that defendant would cease his advertising activities involving plaintiff's marks. Defendant made this representation with no apparent intention of abiding by it, but rather with an intent to mislead plaintiff. Further, the magistrate judge finds that this representation was material in that it led plaintiff to forgo taking further responsive action. Plaintiff's reliance on defendant's representation was reasonable and justifiable based on the communications between the parties. Finally, plaintiff was damaged as a result of its reasonable reliance in that it was forced to incur costs to investigate defendant's actions and its goodwill was also injured.

On these findings, the magistrate judge finds that plaintiff has established its claim of actual fraud.

**Attorney's Fees and Costs**

Plaintiff seeks an award of attorney's fees in the amount of $19,392.50 and an award for

costs in the amount of $4,201.10, for a total of $23,593.60. Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21) at 15. Under 15 U.S.C. § 1117(a), a plaintiff is entitled to an award of this nature in exceptional cases. Such cases involve situations in which a plaintiff has demonstrated to the court that "defendant's conduct was malicious, fraudulent, willful or deliberate in nature." *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 550 (4th Cir. 2004) (internal citations and quotations omitted).

At the outset, plaintiff claims entitlement to attorney's fees due to defendant's willful infringement based on plaintiff's belief that defendant's acts constitute intentional use of a counterfeit mark. As discussed above, the magistrate judge finds that defendant's actions do not constitute use of a counterfeit mark, so plaintiff's award of attorney's fees and costs cannot be maintained on this basis. That said, the magistrate judge finds that defendant acted willfully and deliberately when he promised plaintiff he would cease using plaintiff's mark or anything confusingly similar, yet resumed soliciting business via fax advertisements containing confusingly similar marks within less than two months. Defendant's actions in continuing to send various versions of his fax advertisement despite his promise to plaintiff and despite continued notifications from plaintiff as to the infringing nature of the advertisements is more than sufficient for the magistrate judge to find that defendant acted willfully and deliberately in infringing plaintiff's marks.

### I. Hours Reasonably Expended

In the Fourth Circuit, a plaintiff must establish the reasonableness of the number of hours worked, as well as the reasonableness of the requested rates (the product of which provides the reasonable attorney's fee, or lodestar figure). *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *Cook v. Andrews*, 7 F.Supp.2d 733, 736 (E.D.Va. 1998). The procedure for determining the

reasonable fee for a particular case is provided by *Grissom v. Mills Corp.*, 549 F.3d 313 (4th Cir.

2008), in light of the Supreme Court's guidance in *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct.

1662 (2010). *Bradford v. HSBC Mortg. Corp.*, 859 F. Supp. 2d 783, 790 (E.D. Va. 2012). The

resulting procedure requires the court to engage in the following analytical steps: 1) calculate the

lodestar (the product of hours worked and hourly rate) in light of the *Johnson/Barber*[3] factors; 2)

analyze how many hours were spent reasonably litigating the successful versus unsuccessful

claims; and 3) subtract out those hours worked on unsuccessful claims that were unrelated to the

successful claims. *Id.* at 789. Alternatively, the court may apply a fixed percentage to all hours

worked, but only where the record lacks sufficient evidence regarding hours worked on specific

claims. *Id.* The court need not independently address all of the *Johnson/Barber* factors, as "such

considerations are usually subsumed within the initial calculation of hours reasonably expended

at a reasonable hourly rate." *Freeman v. Potter*, 2006 WL 2631722 at *2 (W.D. Va. 2006)

(citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9 (1983)). Finally, it is important to note that

"the degree of success obtained by plaintiff" is "the most critical factor" in determining the

reasonableness of a fee award. *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 671 (E.D. Va.

2004) (quoting *Hensley,* 461 U.S. at 436-437).

 In support of the requested award, plaintiff submitted the declaration of Michael Culver,

---

[3] These factors include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's*, 577 F.2d 216, 226 (4th Cir. 1978) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

as well as detailed invoices showing the work completed by plaintiff's attorneys in this matter and the cost associated. Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21) Exhs. 1 and 2. Plaintiff's counsel avers under oath that the submissions are an accurate representation of the fees and expenses incurred. Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21) Exh. 1.

Initially, with respect to the *Johnson/Barber* factors, in the context of a default judgment, the magistrate judge finds it unnecessary to engage in an extensive point-by-point analysis. Based on plaintiff's motion for default judgment, the magistrate judge has found all of plaintiff's claims well established save for the claim of statutory damages for trademark counterfeiting. Thus, the most important of the *Johnson/Barber* factors, the results obtained for the client, clearly mitigates in plaintiff's favor. *Lilienthal*, 322 F. Supp. 2d at 671. The magistrate judge has reviewed the bills reflecting time spent by counsel, and in light of experience with other similar cases litigated in this court finds that the time spent appears to be reasonably necessary in the circumstances of this dispute. Also, looking to recent comparable trademark infringement cases resulting in default judgment in the Eastern District of Virginia, plaintiff's requested amount is within the realm of normalcy. *Herbert Richter Metallwaren-Apparatebau GmbH & Co., KG v. GIB Services, LLC*, 2011 WL 2516692 at *1 (E.D. Va. June 23, 2011) (awarding $13,309 in fees); *Trailways Transp. Sys., Inc. v. Lion Corp.*, 2011 WL 2293883 at *1 (E.D. Va. June 9, 2011) (awarding $54,052.50 in fees).

Based on these findings, the magistrate judge finds the number of hours expended in this matter by plaintiff's counsel to be reasonable.

**II. Reasonable Hourly Rates**

Plaintiff must also prove that the hourly rates charged were reasonable. This necessarily requires a fact-intensive inquiry, and affidavits from counsel indicating the precise fees and hours

worked will have to be supported by additional "satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) (quoting *Plyler*, 902 F.2d at 277). Such satisfactory evidence is generally provided in the form of affidavits from other local attorneys who indicate that the requested rates are appropriate, considering the skills of the attorneys involved and the fees generally charged for similar services in the relevant community. *Robinson*, 560 F.3d at 245; *Pinpoint IT Services, LLC v. Atlas IT Exp. Corp.*, 2012 WL 4475334 at *6 (E.D. Va. Sept. 27, 2012) (referring to *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986)).

Based on the invoices provided, the hourly rates charged by counsel are as follows:[4] Mr. Michael Culver, $375-400; Mr. Scott Major, $340- $390; and Mr. Adam Mandell, $215-250. Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21) Exh. 2.[5] Plaintiff indicates that Mr. Culver and Mr. Major both have over twenty years of experience in the intellectual property field, and that Mr. Mandell has seven years of experience. Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21), Exh. 1. Also provided by plaintiff as an exhibit to the motion is a report which contains information regarding hourly rates for intellectual property attorneys in the Washington, D.C. Metropolitan Area. Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21), Exh. 4. Finally, plaintiff cites several other cases which resulted in default judgement for plaintiff and lists the attorney's fees amounts awarded. Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21) at 15.

---

[4] The hourly rates charged by counsel increased over the course of this litigation, so their respective fee rates are shown as ranges.

[5] It should be noted that plaintiff's affidavit (exhibit 1 to the motion) indicates that Mr. Major's rates range from $340-375 and Mr. Mandell's rates range from $215-225 for the relevant period. This fails to consider plaintiff's submitted invoices (exhibit 2 to the motion) for the period after January 1, 2012, which show a rate of $390 for Mr. Major and $250 for Mr. Mandell.

Notably, plaintiff has not submitted any further specific evidence of the reasonableness of the proposed rates and the magistrate judge recognizes that this court is not bound to accept the rates contained in the report provided by plaintiff as reasonable. However, as with the *Laffey* Matrix[6], the court may still consider the report if it finds it to be useful. *Ebersole v. Kline-Perry*, 2012 WL 4473247, at *14 (E.D. Va. Sept. 26, 2012) (citing *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009).

The magistrate judge finds that the report provided does not constitute specific evidence that the hourly rates sought are reasonable within the Eastern District of Virginia with respect to attorneys of similar skill and for similar work. Further, the magistrate judge finds that the cases cited by plaintiff do not provide a useful basis for assessing the reasonableness of the rates in this case, as the cases cited are out of the District of South Carolina, the Eastern District of Michigan, the Southern District of Florida, the Southern District of New York, and the Eastern District of Pennsylvania.[7] In such instances, this court has chosen to assess the reasonableness of attorney's rates in the Northern Virginia area based on the Fourth Circuit's modified *Laffey* matrix provided in *Grissom* (the "*Grissom* table"). *Grissom*, 549 F.3d at 323 (citing *Plyler*, 902 F.2d at 277); *Ebersole*, 2012 WL 4473247 at *15.

---

[6] The *Laffey* Matrix is used as a guideline for reasonable attorneys fees in the Washington/Baltimore area and can be found on the United States Attorney's Office for the District of Columbia's website, http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf.

[7] Specifically, plaintiffs cite the following cases to indicate the reasonableness of the total fee in their memorandum in support of this motion: *Mary Kay Inc. v. Ayres*, 827 F. Supp. 2d 584 (D.S.C. 2011); *Miche Bag, LLC v. Ayers*, 2010 WL 5141662 (D.S.C. Sept. 22, 2010); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837 (E.D. Mich. 2006); *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213 (S.D. Fla. 2004); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123 (S.D.N.Y. 2003); and *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567 (E.D. Pa. 2002)). Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21) at 15.

Looking to plaintiff's attorneys involved in this litigation, based on the *Grissom* table and Mr. Culver's declaration, the only period at issue is that after January 1, 2012.[8] 549 F.3d at 323; Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21) Exh. 1. Accounting for reasonable inflation since the *Grissom* decision, the magistrate judge finds that Mr. Culver and Mr. Major's rates for the period after January 1, 2012 are also reasonable based on the *Grissom* table. According to the original *Grissom* table, the maximum reasonable rate for both attorneys is $380 per hour, but Mr. Culver's rate after January 1, 2012 was $400 per hour and Mr. Major's rate was $390 per hour in the same period. Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21) Exh. 1. Even if the magistrate judge were to apply the *Grissom* table without accounting for inflation, the reduction would amount to a mere $152.[9] Considering that over three years had passed since the *Grissom* decision as of January 1, 2012, the magistrate judge finds that, when accounting for inflation, both Mr. Culver and Mr. Major's rates are reasonable under Fourth Circuit law.

Based on the foregoing, the magistrate judge finds that plaintiff's requested attorney's fee of $19,392.50 was reasonably necessary under the circumstances and should be awarded.

### III. Overall Lodestar

Looking to the overall lodestar calculation, considering *Grissom* and *Perdue*, the

---

[8] Prior to January 1, 2012, all of the rates of plaintiff's attorneys involved in this litigation comported with the *Grissom* table. Mr. Culver and Mr. Major both have over twenty years of experience and thus fall within the $335-380 rate category, while with seven years of experience, Mr. Mandell falls within the $250 rate category. Mr. Culver and Mr. Major's rates were never higher than $375 per hour until January 1, 2012, and Mr. Mandell's hourly rate was never higher than $250 per hour. Thus, the magistrate judge finds that all of the attorneys' rates were reasonable prior to January 1, 2012, and that Mr. Mandell's rate was reasonable throughout.

[9] During the period at issue, Mr. Culver billed 7.5 hours at a rate of $400 per hour for a total fee of $3,000. After reducing the hourly rate to $380 per hour, the reasonable fee for this work would be $2,850 (a $150 reduction). Similarly, in the same period, Mr. Major billed 0.2 hours at a rate of $390 per hour for a total fee of $78. After reducing the hourly rate to $380 per hour, the reasonable fee for this work would be $76 (a $2 reduction).

magistrate judge has analyzed how many hours were spent reasonably litigating the successful versus unsuccessful claims to ensure that any hours worked on unsuccessful claims that were unrelated to the successful claims are deducted from the award. *Perdue*, 130 S. Ct. 1662; *Grissom*, 549 F.3d 313.

Plaintiff provided descriptions of work performed by plaintiff's counsel in the form of detailed invoices. Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21), Exh. 2. Based on these invoices, the magistrate judge finds that the work performed was primarily associated with preparation for the present litigation regarding defendant's infringement of plaintiff's marks and the resulting motion for default judgment. Furthermore, the magistrate judge has found plaintiff's claims to be well pled, with the exception of the claim for trademark counterfeiting. Since any hours worked on this issue would be clearly related to the trademark infringement claim, as well as plaintiff's unfair competition and false advertising claims, the magistrate judge finds that all hours worked were reasonably necessary, and thus no reduction in hours is required.

### IV. Additional Costs

Pursuant to Fed. R. Civ. Pro. 54(d)(1) and 28 U.S.C. § 1920, plaintiff is entitled to an award of certain costs. *Mary Kay Inc.*, 827 F. Supp. 2d at 594. Plaintiff has requested an award of costs in the amount of $4,201.10. Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21) at 15. Plaintiff's requested award includes: the filing fee ($350); charges for the process server's multiple attempts to serve defendant ($950); charges by Sprint for compliance with a subpoena ($213); charges by the Washington Times for publication of service ($369.60); and charges for a private investigator hired to look into the defendant in a variety of ways, including driving to his home and surveilling his vehicle ($2,318.50). Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21), Exhs. 1, 3. Plaintiff claims that even if these fees are not allowable under the applicable statutes

or rules, they should be allowed due to defendant's fraudulent actions. Pl.'s Mem. in Supp. of Mot. for Def. J. (no. 21) at 16.

The magistrate judge finds that plaintiff has not established a sufficient basis for an award of the private investigator's charges. Such charges are not contemplated as allowable expenses under 28 U.S.C. § 1920 and have been routinely disallowed in the Fourth Circuit. *See Mary Kay Inc.*, 827 F. Supp. 2d at 594 (finding that fees for private investigators are not allowable under § 1920); *Jackson v. Estelle Place, LLC*, 2009 WL 1321506 at *3 n. 1 (E.D. Va. May 8, 2009) (finding the need for an investigator "highly questionable" in the context of civil litigation and refusing to award such costs). The magistrate judge finds that all other costs were reasonably necessary and thus should be reimbursed.

On these findings, the magistrate judge finds that plaintiff is entitled to a reasonable attorney's fee of $19,392.50, as well as an award of costs in the amount of $1,882.60 (netting out the costs for the private investigator), as such expenses are reasonable and were necessarily required to enforce plaintiff's rights.

## Recommendation

The magistrate judge recommends that plaintiff's motion for default judgment be granted in part, and that the court enter an injunction enjoining defendant from further violation of plaintiff's rights. It is further recommended that defendant be ordered to destroy, or deliver to plaintiff for destruction, all advertisements found to infringe plaintiff's marks or that make false or misleading representation of fact. The magistrate judge also recommends that plaintiff's motion for default judgment be granted with respect to attorney's fees in the amount of $19,392.50 and costs in the amount of $1,882.60. The magistrate judge, however, recommends that plaintiff's motion for default judgment be denied with respect to the requested statutory

damages pursuant to 15 U.S.C. § 1117(b) and (c).

## **Notice**

By means of the court's electronic filing system, and by mailing a copy of this report and recommendation to defendant Stokes at his address for service of process, the parties are notified as follows. Objections to this report and recommendation must be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

/s/

Thomas Rawles Jones, Jr.
United States Magistrate Judge

November 20, 2012
Alexandria, Virginia